# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**United States of America,**

      **Plaintiff/Respondent,**

**v.**　　　　　　　　　　　　　　　　　　　　　　　Case No. 07-20168-02-JWL

**Monterial Wesley,**

      **Defendant/Petitioner.**

## MEMORANDUM & ORDER

On February 1, 2008, Monterial Wesley was charged along with twenty-three other individuals in a 39-count superseding indictment. After the jury was impaneled but before any evidence was presented, Mr. Wesley pled guilty to four counts of the indictment, including conspiracy to manufacture, to possess with intent to distribute, or to distribute cocaine base and/or cocaine. *See United States v. Wesley*, 423 Fed. Appx. 838 (10th Cir. 2011). He proceeded to trial on the eight remaining counts against him and was subsequently convicted on two of those counts. *See id.* at 839. At Mr. Wesley's sentencing, the court found that Mr. Wesley was accountable for in excess of 150 kilograms of cocaine, which corresponded to a base offense level of 38 (the highest level at that time). The court then increased that offense level by two levels based on Mr. Wesley's possession of a firearm, for a total offense level of 40. With a criminal history score of II, the resulting guideline range was calculated to be 324 to 405 months and the court ultimately sentenced Mr. Wesley to 360 months' imprisonment. *See id.* On appeal to the Tenth Circuit, Mr. Wesley argued that the court relied on insufficient and unreliable evidence in assessing the drug quantity attributable to him and that he was entitled to

a two-point reduction for acceptance of responsibility because he pled guilty to the most serious charge in the indictment. The Circuit affirmed the court's rulings. *Id*. Thereafter, the court denied Mr. Wesley's motion to vacate under 28 U.S.C. § 2255.

In January 2015, Mr. Wesley filed a pro se motion for a sentence reduction under Amendment 782. The Office of the Federal Public Defender then entered its appearance on behalf of Mr. Wesley and, after the government filed its response to Mr. Wesley's pro se motion, the Federal Public Defender's office moved to withdraw that motion without prejudice to refiling. The motion was granted. In July 2015, the Federal Public Defender's office filed a motion seeking to withdraw as counsel for Mr. Wesley in light of a conflict of interest; asking the court to vacate its order granting the motion to withdraw Mr. Wesley's pro se § 3582(c) motion; and asking for additional time for Mr. Wesley to file a reply to the government's response to the § 3582(c) motion. That motion was granted. Mr. Wesley then filed a motion again asking to withdraw his pro se motion in lieu of filing a reply to the government's response. The court granted that motion in late July 2015.

This matter is now before the court on Mr. Wesley's pro se motion for an extension of time to file a renewed motion for a sentence reduction under § 3582(c) and for the appointment of counsel to assist him in connection with that motion. The motion is denied. There is no constitutional right to counsel beyond the direct appeal of a conviction. *Swazo v. Wyo. Dep't of Corrs.*, 23 F.3d 332, 333 (10th Cir. 1994); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Thus, Mr. Wesley is not entitled to the appointment of counsel at this juncture. Moreover, as will be explained, the record undisputedly indicates that Mr. Wesley is not entitled to a

reduction in his sentence in any event. There is simply no reason, then, to appoint counsel to assist Mr. Wesley in connection with his motion.

In his motion for a sentence reduction,[1] Mr. Wesley contends that, under the amended Drug Quantity Table in U.S.S.G. § 2D1.1, his base offense level is now 36 and his total offense level is 38, with an amended guideline range of 262 months to 327 months imprisonment. In support of his argument, Mr. Wesley contends that the court, at the initial sentencing, found Mr. Wesley responsible for 150 kilograms of cocaine, which now corresponds to a base offense level of 36. The government, in response, contends that the court in fact found Mr. Wesley responsible for more than 450 kilograms of cocaine such that, under the amended Drug Quantity Table, Mr. Wesley's base offense level remains at Level 38 with a total offense level of 40. In other words, the government contends that Mr. Wesley is not entitled to relief under Amendment 782 because that amendment does not have the effect of lowering Mr. Wesley's applicable guideline range.

A review of the sentencing transcript from Mr. Wesley's initial sentencing supports the government's argument. While the court only needed to find Mr. Wesley responsible for 150

---

[1] While Mr. Wesley's motion purports to seek an extension of time to file a motion for sentence reduction rather than a ruling on the merits, the record is fully developed as to the merits of whether Mr. Wesley is entitled to a sentence reduction and the parties have briefed the merits in their submissions. In the interest of efficiency, then, the court moves directly to the merits of the Amendment 782 reduction as there is no need for additional briefing on that issue and Mr. Wesley has nothing to gain from an extension of time to file additional submissions. In his motion, Mr. Wesley also seeks an extension of time to file a § 2255 petition concerning purported violations of his constitutional rights relating to Mr. Santa-Anna's testimony. The court lacks jurisdiction to consider that aspect of Mr. Wesley's motion and must dismiss it. Any request to equitably toll or stay the limitations period with respect to a § 2255 motion is not ripe for adjudication until a § 2255 motion has actually been filed. *United States v. Daniels*, 191 Fed. Appx. 622 (10th Cir. July 11, 2006).

kilograms of cocaine in order to meet the minimum threshold for the highest base offense level at that time, the court specifically found that Mr. Wesley was responsible for 360 kilograms of cocaine based on the amount of cocaine that Cruz Santa-Anna was supplying to the conspiracy and that he was responsible for 165 kilograms of cocaine supplied by Thomas Humphrey. Those amounts clearly exceed the 450-kilogram threshold for a base offense level of 38 in the amended Drug Quantity Table. With the same two-level increase for possession of a firearm, Mr. Wesley's total offense level is 40 and, as the government contends, his guideline range remains 324 months to 405 months.

Mr. Wesley nonetheless urges that he is entitled to a reduction because Cruz Santa-Anna "changed his story" after testifying at Mr. Wesley's sentencing hearing and testified to much lower drug quantities at the sentencing hearing of Shevel Foy, one of Mr. Wesley's co-defendants. According to Mr. Wesley, the court should consider the testimony of Mr. Santa-Anna from Mr. Foy's sentencing and find that the 450-kilogram threshold quantity has not been established. This argument is rejected because Mr. Santa-Anna's testimony at Mr. Foy's sentencing was substantially the same as it was at Mr. Wesley's sentencing hearing. At Mr. Wesley's sentencing, Mr. Santa-Anna testified that he supplied 30 kilograms each month to the conspiracy over a two-and-a-half-year period from 2004 through mid-2006. As a conservative estimate, the court attributed 40 percent of that weight, or 360 kilograms, to Mr. Wesley. At Mr. Foy's sentencing hearing, Mr. Santa-Anna testified that within six months of when he began supplying cocaine to Mr. Foy in 2001, he was regularly supplying 5 or 10 kilograms of cocaine to Mr. Foy "two, three times a month." That testimony is entirely consistent with his prior testimony that he supplied 30 kilograms of cocaine to the conspiracy each month.

4

In explaining why the court could "undoubtedly" attribute more than 150 kilograms of cocaine to Mr. Foy, the court started with the 165 kilograms supplied by Mr. Humphrey. In light of certain testimony at trial that supplies from Mr. Humphrey experienced a "drought" sometime during 2007, the court looked to only a small part of quantities delivered by Mr. Santa-Anna to Mr. Foy to establish that quantities delivered by Mr. Santa-Anna sufficiently made up for any "drought" in quantities delivered by Mr. Humphrey for purposes of reaching the 150-kilogram threshold. In showing that any drought in 2007 that might be subtracted from the 165 kilograms did not take Mr. Foy below the 150-kilogram threshold, the court used only a six-month period in 2006 and used conservative estimates of 5-kilogram quantities two times per month, or 60 kilograms of cocaine. While Mr. Wesley argues that the court attributed only 60 kilograms of cocaine to Mr. Foy, nothing in the court's remarks can reasonably be construed as attributing lower quantities of drugs to Mr. Foy. In fact, the court expressly stated during Mr. Foy's sentencing that "Mr. Foy and Mr. Wesley were partners, partners in crime, in this drug conspiracy" and that "Mr. Foy and Mr. Wesley were both responsible for the joint undertaking and the receipt of cocaine from both Mr. Humphrey and Mr. Santa-Anna." The court went further by indicating that "Mr. Foy should be held responsible for all of the conduct of Mr. Wesley." Thus, while the court performed different mathematical calculations in connection with Mr. Foy's sentencing, the court did not find that Mr. Foy was responsible for lower drug quantities.

Because Amendment 782 does not have the effect of lowering Mr. Wesley's guideline range, the court does not have jurisdiction to reduce Mr. Wesley's sentence and the motion must be dismissed.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Wesley's motion to appoint counsel and for extension of time to file a renewed motion (doc. 1720) is dismissed.

**IT IS SO ORDERED.**

Dated this 10th day of February, 2016, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge