IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA, )
)
                Plaintiff, )
)
v. )   Case No. 07-20168-02-JWL
)
MONTERIAL WESLEY, )
)
                Defendant. )
)
_____)

## **MEMORANDUM AND ORDER**

Defendant Monterial Wesley was convicted of numerous drug-related charges and was ultimately sentenced to 360 months imprisonment. Mr. Wesley is presently incarcerated at FCI Forrest City Low and his anticipated release date is February 2, 2034. In July 2020, the court denied defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). This matter is now before the court on Mr. Wesley's motion for reconsideration of that order (doc. 1930). The motion is denied.

In resolving Mr. Wesley's initial motion, the court held that Mr. Wesley had not shown that he suffers from medical conditions that place him at an elevated risk of harm from COVID-19. Specifically, the court noted that Mr. Wesley's cholesterol is managed well with daily medication; that the medical records reflected that Mr. Wesley's seizure disorder was "resolved" by March 2020, that Mr. Wesley reported to medical staff that he had not had a seizure in more than a year, and that Mr. Wesley was noncompliant with

respect to prescribed medical treatment for that disorder; and that Mr. Wesley had abandoned his assertion that he had a history of respiratory infections based on juvenile asthma. In his motion for reconsideration, Mr. Wesley has provided the court with additional information concerning his seizure disorder and he seeks reconsideration of whether that disorder warrants compassionate release. Mr. Wesley further asserts that the court erred by failing to consider his health conditions in combination (and in failing to consider Mr. Wesley's African-American race) in deciding whether those conditions warrant his immediate release.[1]

The court begins with the additional information provided by Mr. Wesley concerning his seizure disorder. He avers that he had a seizure on April 4, 2020 and again on June 6, 2020 but that neither one was recorded by medical staff because medical staff refused to see him. He avers that his refusal to take prescription medication to control his seizures is because that medicine makes him nauseated, causes headaches and, according to him, "makes seizures more frequent" and he reiterates that the CDC lists "neurologic conditions" as  ones that "might" place an individual at an increased risk for severe illness from COVID-19. He has also submitted the medical opinion of Dr. Stewart Grote, D.O who has reviewed Mr. Wesley's medical records and opines that his medical conditions place him at a "high risk" of death or severe illness if he were to contract COVID-19.

---

[1] To the extent Mr. Wesley also contends that the court failed to appropriately analyze his previous arguments concerning high cholesterol and his history of respiratory infections, the court denies the motion as Mr. Wesley simply rehashes the arguments he made in the first instance. *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (motion to reconsider is not a second opportunity for the losing party to make its strongest case, to rehash arguments or to dress up arguments that previously failed).

2

None of this information changes the court's decision. Mr. Wesley's stated concern that his seizures will increase his risk of severe illness from COVID-19 is undercut by his admission that he is noncompliant with medical advice to take medicine to control those seizures and there is no indication that Mr. Wesley relayed any specific alleged side effects (other than stomach discomfort) to medical staff so that they could assess those complaints. Importantly, while the CDC notes that "having neurologic conditions such as dementia may increase" the risk of severe illness from COVID-19, the CDC offers specific "actions to take" to lower that risk—namely, taking all medicines as prescribed. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#neurologic-conditions. Moreover, Dr. Grote's opinion is highly conclusory and is based more on the labels assigned to certain medical conditions than it is on Mr. Wesley's own medical history. *See, e.g.*, Report at 1 ("Mr. Wesley having being [sic] diagnosed with Epileptic Seizures places him at an increased risk of death or severe illness."). And more importantly, it is inconsistent with more recent information that people with epilepsy do not have an increased risk of contracting COVID-19 or developing serious complications from it. *See, e.g.*, https://www.dukehealth.org/blog/epilepsy-and-covid-19-what-you-need-know-and-when-seek-care.

In any event, the court will assume for purposes of the motion that Mr. Wesley's seizure disorder "may" increase his risk of severe illness and will put aside his failure to comply with doctors' orders regarding that disorder. Still, Mr. Wesley has not demonstrated that his seizure disorder warrants compassionate release. While Mr. Wesley is incarcerated in a facility that has experienced a significant outbreak of COVID-19 cases,

that outbreak appears to now be contained and controlled. As of October 1, 2020, Forrest City Low FCI reports that 2 inmates and 10 staff members have active cases of COVID-19. No inmates or staff members have succumbed to the virus at the facility and, in fact, 653 inmates have recovered from it. This suggests to the court that the facility can and will properly treat Mr. Wesley if he contracts COVID-19. *United States v. Grant*, 2020 WL 5439972, at *3 (N.D. Ala. Sept. 10, 2020) (COVID-19 statistics from Forrest City Low reflect that facility is properly treating inmates and that virus is now contained); *United States v. Duvall*, 2020 WL 5390458, at *4 (E.D. Tex. Sept. 4, 2020) (same). In other words, there is no indication that Mr. Wesley will receive better medical care in the community than that which he would receive in prison if he does contract COVID-19.

The court also rejects Mr. Wesley's contention that the court failed to analyze whether Mr. Wesley's medical conditions (and his African-American race, which he asserts as a basis for release for the first time) in combination warrant emergency release. He asserts that his seizure disorder is his most serious medical condition and there is no evidence that any other condition identified by Mr. Wesley affects his general overall health in any meaningful way. Without exception, Mr. Wesley's other conditions (high cholesterol, occasional respiratory infections) are adequately managed by Mr. Wesley and the BOP. Mr. Wesley's African-American race does not change that analysis. *See United States v. Leigh-James*, 2020 WL 4003566, at *8 (D. Conn. July 15, 2020) (collecting cases and recognizing that higher death and hospitalization rates from COVID-19 among African-Americans "most probably owes to long-standing systemic health and social inequities" rather than the fact of race itself).

4

Lastly, while the court in its initial memorandum and order did not address the applicable § 3553(a) factors because it readily found that Mr. Wesley had not shown that he suffers from medical conditions placing him at an elevated risk of harm from COVID-19, the court, on reconsideration, now finds that compassionate release would materially depart from an appropriate § 3553(a) sentence.  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring the consideration of applicable § 3553(a) factors if court finds that extraordinary and compelling reasons warrant reduction).  Thus, even if the court found that Mr. Wesley had established extraordinary and compelling reasons for release, the court would nonetheless deny the motion based on the § 3553(a) factors.  Those factors include (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants.  *See* 18 U.S.C. § 3553(a)(1)–(6)).

Applying those factors here, the court would decline to reduce Mr. Wesley's sentence even if it found that his medical conditions constituted an "extraordinary and compelling" reason supporting emergency release.  This is especially true because of the significant quantity of drugs attributed to Mr. Wesley and the inherent violence associated with the related firearms offense.  The court at sentencing found that Mr. Wesley was accountable for more than 150 kilograms of cocaine which corresponded to the highest base offense level at the time and, as noted by the Tenth Circuit, was a conservative

estimate. *United States v. Wesley*, 423 Fed. Appx. 838, 840 (10th Cir. 2011) (district court's "conservative estimate" concerning drug quantity was based on "conservative, cautious interpretations" of the evidence). That base offense level was increased based on Mr. Wesley's possession of a firearm. Based on the seriousness of Mr. Wesley's crimes, he received a 30-year sentence and is presently scheduled for release in February 2034. He has approximately 162 months remaining on his sentence—just less than half his sentence. In such circumstances, reducing Mr. Wesley's sentence to time served would constitute a significant and unjustified windfall. For these reasons, Mr. Wesley's release from custody would be inconsistent with public safety, the need to provide just punishment; and the need to promote respect for the law and would fail to reflect the seriousness of his offenses. In short, the court finds that Mr. Wesley's original sentence remains sufficient but not greater than necessary to serve the purposes of sentencing. *See United States v. Thomas*, 2020 WL 5640745, *4 (N.D. Ind. Sept. 22, 2020) (regardless of "extraordinary and compelling" analysis, court found that § 3553(a) factors "overwhelmingly" supported continued incarceration where defendant devoted adult life to "flooding the streets with cocaine"); *United States v. Cheatham*, 2020 WL 5423890, at *2 (D. Md. Sept. 10, 2020) (even if court found extraordinary and compelling reasons warranting reduction, court would deny motion where defendant served only half of original sentence, was involved in extensive drug trafficking conspiracy involving large quantities of cocaine, and possessed a firearm to facilitate drug dealing); *United States v. Goodwin*, 2020 WL 5412840, at *304 (E.D. Tenn. Sept. 9, 2020) (denying motion where defendant drug crimes were unquestionably serious and defendant had served roughly half his sentence; nothing that "courts have

6

generally granted compassionate release only to defendants who have served a significant portion of their sentences"); *United States v. Wilson*, 2020 WL 4901714, at *6 (W.D. Wash. Aug. 20, 2020) (even if defendant had established extraordinary and compelling reasons to render him eligible for a reduction, court would deny the motion based on § 3553(a) factors—defendant was involved in large drug conspiracy and was personally involved in the distribution of kilogram quantities of cocaine); *United States v. Ball*, 2020 WL 4816197, at *4 (E.D. Mich. Aug. 19, 2020) (denying motion for compassionate release where defendant served only half of 120-month sentence for drug distribution crimes).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for reconsideration (doc. 1930) is **denied**.

**IT IS SO ORDERED.**

Dated this 1st day of October, 2020, at Kansas City, Kansas.

*s/ John W. Lungstrum*
John W. Lungstrum
United States District Judge