FILED
United States Court of Appeals
Tenth Circuit

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**August 6, 2021**

Christopher M. Wolpert
Clerk of Court

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MONTERIAL WESLEY,

    Defendant - Appellant.

No. 20-3208
(D.C. No. 2:07-CR-20168-JWL-2)
(D. Kan.)

---

## JUDGMENT

---

Before **HARTZ**, **HOLMES**, and **EID**, Circuit Judges.

---

This case originated in the District of Kansas and was submitted on the briefs at the direction of the court.

The judgment of that court is affirmed.

If defendant, Monterial Wesley was released pending appeal, the court further orders that, within 30 days from the filing of the mandate of this court in the District Court, the defendant shall surrender to the United States Marshal for the District of Kansas in execution of the judgment and sentence imposed; however, the District Court, in its discretion, may permit the defendant to surrender directly to a designated Bureau of

Prisons institution for service of sentence.

Entered for the Court

CHRISTOPHER M. WOLPERT, Clerk

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**August 6, 2021**

**FOR THE TENTH CIRCUIT**

**Christopher M. Wolpert**
**Clerk of Court**

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | |
| v. | No. 20-3195 |
| JAMES A. HALD, | |
| Defendant - Appellant. | |

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | |
| v. | No. 20-3208 |
| MONTERIAL WESLEY, | |
| Defendant - Appellant. | |

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | |
| v. | No. 20-3228 |
| WALTER B. SANDS, | |
| Defendant - Appellant. | |

_____

**Appeals from the United States District Court
for the District of Kansas
(D.C. No. 6:11-CR-10227-EFM-1)
(D.C. No. 2:07-CR-20168-JWL-2)
(D.C. No. 2:06-CR-20044-JAR-3)**

_____

Kayla Gassmann, Appellate Attorney (Melody Brannon, Federal Public Defender, with her on the briefs), Kansas Federal Public Defender's Office, Topeka, Kansas, for Defendant - Appellant James A. Hald.

Monterial Wesley, pro se.

Daniel T. Hansmeier, Appellate Chief (Melody Brannon, Federal Public Defender, with him on the briefs), Kansas Federal Public Defender's Officer, Topeka, Kansas, for Defendant - Appellant Walter B. Sands.

James A. Brown, Assistant United States Attorney (Stephen R. McAllister, United States Attorney, and Jared S. Maag, Assistant United States Attorney, with him on the briefs, and Duston J. Slinkard, Acting United States Attorney, District of Kansas, on the memorandum briefs), District of Kansas, Topeka, Kansas, for Appellee United States of America.

_____

Before **HARTZ**, **HOLMES**, and **EID**, Circuit Judges.

_____

**HARTZ**, Circuit Judge.

_____

James A. Hald, Monterial Wesley, and Walter B. Sands (Defendants) appeal the denials of their district-court motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[1]  They are among the many prisoners who have sought to be released from prison confinement during the COVID-19 pandemic.  Each claimed that his underlying health conditions and mounting infections at his correctional

_____

[1]  Although these cases were not consolidated, we deal with them jointly in this opinion because of the similarity of the issues presented.

2

facility satisfied the statute's "extraordinary and compelling reasons" requirement for early release.[2]  18 U.S.C. § 3582(c)(1)(A).  But before granting a sentence reduction the district court must also consider whether the factors set forth in 18 U.S.C. § 3553(a) support the reduction.  *See* 18 U.S.C. § 3582(c)(1)(A).  And each of the Defendants was denied relief by the United States District Court for the District of Kansas based on the court's discretionary analysis of the § 3553(a) factors.

The principal issue on appeal is whether, as argued by Hald and Sands, a district court is permitted to deny relief based on its assessment of the § 3553(a) factors without first making a determination on the existence of "extraordinary and compelling reasons."  We reject the argument, holding that district courts are free to deny relief on the basis of any one of § 3582(c)(1)(A)'s requirements without considering the others.  We also reject the other arguments raised by Sands and Wesley.[3]  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm denial of all three motions for compassionate release.

---

[2]  As of oral argument in May 2021, all three men had either been vaccinated or been offered the opportunity to be vaccinated against COVID-19.  Although we do not consider this development in resolving their appeals, there is certainly room for doubt that Defendants' present circumstances would support a finding of "extraordinary and compelling reasons."  *See United States v. Baeza-Vargas*, -- F. Supp. 3d --, 2021 WL 1250349, at *3–4 (D. Ariz. April 5, 2021) (collecting district-court cases representing a "growing consensus" that either receiving or refusing COVID-19 vaccination "weighs against a finding of extraordinary and compelling circumstances" for purposes of § 3582(c)(1)(A)).

[3]  Wesley's notice of appeal refers only to the district court's denial of his motion for reconsideration of the denial of his motion for release.  But since his notice of appeal would have also been timely with respect to the court's initial order denying his motion for compassionate release, we construe Wesley's pro se notice of appeal as

## I.    STATUTORY FRAMEWORK

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed; but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citation and internal quotation marks omitted).  One such exception is codified at 18 U.S.C. § 3582(c)(1)(A).  From its enactment in 1984 until 2018, § 3582(c)(1)(A) allowed only the Director of the Bureau of Prisons (BOP) to move for a reduction in a defendant's sentence, making the defendant "wholly dependent upon the Director of the BOP [to do] so on his or her behalf." *United States v. McGee*, 992 F.3d 1035, 1041 (10th Cir. 2021).  This arrangement resulted in infrequent and perhaps uneven application of § 3582(c)(1)(A)—between 1984 and 2013 the Director of the BOP used the process to release an average of only 24 inmates per year.  *See id*.

In 2018 Congress enacted the First Step Act.  Relevant here, § 603(b) of the Act, entitled "INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE," amended § 3582(c)(1)(A) to allow defendants to

---

encompassing both the original denial of his motion under § 3582(c)(1)(A) and the denial of his motion for reconsideration. *Cf. Artes-Roy v. City of Aspen*, 31 F.3d 959, 961 n.5 (10th Cir. 1994) ("[A]n appeal from the denial of a Rule 59 motion will be sufficient to permit consideration of the merits of the [judgment], if the appeal is otherwise proper, the intent to appeal from the final judgment is clear, and the opposing party was not misled or prejudiced." (internal quotation marks omitted)). (The proposed amendments to Fed. R. App. P. 3, which would become effective later this year, further appear to support our treatment of Wesley's notice of appeal. *See* https://www.uscourts.gov/rules-policies/pending-rules-and-forms-amendments.)

seek relief under the statute on their own, rather than depending on the Director of

the BOP. *See id* at 1042. The provision now reads, in relevant part, as follows:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or
> upon motion of the defendant after the defendant has fully exhausted all
> administrative rights to appeal a failure of the Bureau of Prisons to
> bring a motion on the defendant's behalf or the lapse of 30 days from
> the receipt of such a request by the warden of the defendant's facility,
> whichever is earlier, may reduce the term of imprisonment (and may
> impose a term of probation or supervised release with or without
> conditions that does not exceed the unserved portion of the original term
> of imprisonment), after considering the factors set forth in section
> 3553(a) to the extent that they are applicable, if it finds that—
>
> . . . extraordinary and compelling reasons warrant such a reduction
> . . .
>
> and that such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission . . . .

We recently held that the plain language of the statute creates a "three-step

test." *McGee*, 992 F.3d at 1043; *see United States v. Maumau*, 993 F.3d 821, 831

(10th Cir. 2021). "At step one . . . a district court must find whether extraordinary

and compelling reasons warrant a sentence reduction." *McGee*, 992 F.3d at 1042

(brackets and internal quotation marks omitted). "At step two . . . a district court

must find whether such reduction is consistent with applicable policy statements

issued by the Sentencing Commission." *Id*. (brackets, emphasis, and internal

quotation marks omitted). "At step three . . . § 3582(c)(1)(A) instructs a court to

consider any applicable [18 U.S.C.] § 3553(a) factors and determine whether, in its

discretion, the reduction authorized by steps one and two is warranted in whole or in

part under the particular circumstances of the case." *Id*. (original brackets and

5

internal quotation marks omitted); *see Maumau*, 993 F.3d at 831 (same).  We declared (although Hald and Sands contend that our statement was nonbinding dictum) that "'district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others.'"  *McGee*, 992 F.3d at 1043 (quoting *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021)); *Maumau*, 993 F.3d at 831 n.4 (same).  To *grant* a motion for compassionate release, however, the district court "must of course address all three steps."  *McGee*, 992 F.3d at 1043 (internal quotation marks omitted).[4]

---

[4]  In *McGee* and *Maumau* we also clarified two matters that are not directly relevant to this appeal.  First, we held that "district courts, in applying the first part of § 3582(c)(1)(A)'s statutory test, have the authority to determine for themselves what constitutes 'extraordinary and compelling reasons,'" *McGee*, 992 F.3d at 1045, rejecting the government's suggestion that the Sentencing Commission, rather than the courts, should "define what types of circumstances constitute extraordinary and compelling reasons," *id.* at 1043 (internal quotation marks omitted); *see Maumau*, 993 F.3d at 832.  The design of Congress in amending § 3582(c)(1)(A) was not to create an open season for resentencing (after all, the title of the amendment speaks in terms of "Compassionate" release, *see* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 § 603(b)); but our opinions in *McGee* and *Maumau* suggest that the district court has substantial discretion.  Second, we held that the relevant Sentencing Commission policy statement, USSG § 1B1.13, "is applicable only to motions for sentence reductions filed by the Director of the BOP, and not to motions filed directly by defendants."  *McGee*, 992 F.3d at 1050; *Maumau*, 993 F.3d at 836–37.  Thus, until the additional voting members required for a quorum are appointed to the Sentencing Commission and the Commission is able to "comply with its statutory duty of promulgating a post-First Step Act policy statement regarding the appropriate use of the sentence reduction provisions of § 3582(c)(1)(A)(i)," the district court's discretion is not restricted by any Sentencing Commission policy statements, *McGee*, 992 F.3d at 1050, although it would hardly be an abuse of discretion for a district court to look to the present policy statement for guidance.

## II.    PROCEEDINGS BELOW

### A.    Hald

In October 2011 Hald was indicted in Kansas federal court on one count of conspiracy to distribute 50 grams or more of methamphetamine and three substantive counts of possession with intent to distribute methamphetamine (100.5 grams, 86.1 grams, and 543.4 grams).  After rejecting an initial plea agreement under which Hald would have served 180 months' imprisonment, the district court approved in March 2012 an agreement under which he would plead guilty to the conspiracy count and be sentenced to 210 months' imprisonment, with the remaining counts being dismissed.

In July 2020, a little less than halfway through his sentence, Hald filed a motion under § 3582(c)(1)(A) asking the district court to reduce his sentence to time served, although imposing home confinement for five years as a condition of supervised release and adding five years to his five-year term of supervised release. The motion claimed that "extraordinary and compelling reasons warrant[ed] immediate reduction of his sentence."  Hald R., Vol. 1 at 52.  He argued that his preexisting health conditions—obesity, hypertension, and Hepatitis C—put him at high risk of serious illness or death should he become infected with COVID-19 and that the close quarters at his correctional facility, FMC Fort Worth, had led to a high prevalence of the disease.[5]

_____

[5]  Hald's motion appears to suggest that he had already been infected by COVID-19 at the time, *see* Hald R., Vol. 1 at 58, though he later represented in supplemental appellate briefing that he "ha[d] never tested positive for COVID-19," Hald Supp. Aplt. Br. at 1.  Given the ambiguity produced by these apparently conflicting

The government opposed Hald's motion, arguing that his "medical conditions . . . when considered collectively [did not] establish extraordinary and compelling circumstances," Hald R., Vol. 1 at 102, and that even if they did, consideration of the § 3553(a) factors would still warrant denial of the motion.

The district court denied Hald's motion. *See United States v. Hald*, No. 11-10227-01-EFM, 2020 WL 5548826, at *3 (D. Kan. Sept. 16, 2020). Although it found "that [his] medical conditions, in tandem with the COVID-19 pandemic, may present an extraordinary and compelling reason" for early release, *id.* at *2, the court decided that no sentence reduction was warranted, *id*. at *2–3. On consideration of the § 3553(a) factors, it noted the serious nature of Hald's offense, the violent circumstances surrounding the offense, and his lengthy criminal history, concluding "that the 210-month sentence originally imposed remains sufficient, but not greater than necessary, to meet the sentencing factors in § 3553(a) and punish the offense involved." *Id.* at *3.

## B.    Wesley

In 2008 Wesley was indicted in Kansas federal court on 13 counts arising out of a conspiracy to distribute cocaine and cocaine base (crack). Among the charges was one count of using a firearm "during and in relation to . . . [a] drug trafficking

---

statements and the government's failure to raise this point, we need not linger on it. We merely note that, like access to vaccination, prior infection and recovery from COVID-19 would presumably weigh against a finding of extraordinary and compelling reasons. *See United States v. Neal*, No. CR 11-28, 2020 WL 4334792, at *1 (E.D. La. July 28, 2020) (collecting district-court cases).

crime," in violation of 18 U.S.C. § 924(c).  After Wesley pleaded guilty (without the benefit of a plea agreement) to the conspiracy count and three counts of using a telephone to facilitate the conspiracy, he went to trial on the nine remaining counts and was ultimately convicted on just two of them, both being charges of attempted possession with intent to distribute cocaine.  At sentencing, "the district court found that Mr. Wesley was accountable for 150 kilograms of cocaine, had possessed a firearm, and did not qualify for an adjustment for acceptance of responsibility," resulting in a guideline range of 324 to 405 months.  *United States v. Wesley*, 423 F. App'x 838, 839 (10th Cir. 2011) (unpublished) (*Wesley I*).  In October 2009 Wesley was sentenced to 30 years' imprisonment, to be followed by five years' supervised release.  We affirmed the sentence on direct appeal.  *See id.* at 841.

In May 2020, about one-third through his sentence, Wesley filed a motion under § 3582(c)(1)(A) to reduce his sentence to time served while imposing home confinement as a condition of supervised release.  Wesley argued that his preexisting health conditions—epileptic seizures, hyperlipidemia (high cholesterol), and "respiratory infections related to juvenile asthma"—put him at "imminent risk" of serious disease or death should he contract COVID-19, and that those risk factors, coupled with the prevalence of the virus at his correctional facility, FCI Forrest City Low, constituted extraordinary and compelling reasons warranting his release.  Wesley R., Vol. 1 at 41.  The government opposed Wesley's motion, arguing that he had failed to present extraordinary and compelling reasons, and even if he had, consideration of the § 3553(a) factors would still require denial.  The government

9

also pointed out that BOP records indicated that his asthma could not have been serious because it was not being treated by medication or inhaler.  Wesley failed to address the asthma issue at all in his reply brief, relying solely on his epileptic seizures and hyperlipidemia.

The district court denied Wesley's motion, finding that he "ha[d] simply not shown that he bears an increased risk of serious medical harm," and thus could not show that "extraordinary and compelling reasons warrant his release from prison." *United States v. Wesley*, No. 07-20168-02-JWL, 2020 WL 3868901, at *3 (D. Kan. July 9, 2020) (*Wesley II*).  The court noted that the record did not support a finding that any of Wesley's medical conditions "place[d] him at an elevated risk of harm from the virus."  *Id.* at *2.  It found that "Wesley's cholesterol is managed with daily medication and there is no evidence that this condition is debilitating in any way," and that he had not reported a seizure in over a year and had "refused to take the [anti-seizure] medication prescribed to him."  *Id.* at *2–3.  The court further observed that high cholesterol was not "among the conditions cited by the Centers for Disease Control as involving some increased risk of complications from Covid-19 infection," *id.* at *2, and neither were seizure disorders, *see id.* at *3.  Given Wesley's failure to address his juvenile asthma or related respiratory conditions in his reply brief, the court understood that he was no longer seeking relief on that basis.  *See id.* at *1 n.2.

In July 2020, Wesley moved for reconsideration, asserting, among other things, that the district court had overlooked or otherwise failed to consider information relevant to his various medical conditions.  For instance, he claimed to

have newly discovered evidence reflecting that he had suffered seizures as recently as June 2020 and evidence substantiating his claimed respiratory conditions.  Wesley also submitted a two-page affidavit from a medical doctor offering opinions on his conditions and their effect on his risk of death or severe illness were he to contract COVID-19.  The district court denied the motion for reconsideration.  *See United States v. Wesley*, No. 07-20168-02-JWL, 2020 WL 5848897, at *3 (D. Kan. Oct. 1, 2020) (*Wesley III*).  First, it said that even if it were to "assume for purposes of the motion that Mr. Wesley's seizure disorder 'may' increase his risk of severe illness," that still would not be sufficient to establish extraordinary and compelling reasons because the outbreak at FCI Forrest City Low "appears to now be contained and controlled."  *Id.* at *2.  Second, it said that even if Wesley's medical conditions did constitute an extraordinary and compelling reason, compassionate release would still be inappropriate based on application of the § 3553(a) factors.  *See id.* at *3.  The court pointed to the "significant quantity" of drugs (more than 150 kilograms of cocaine) attributed to Wesley as well as the "inherent violence associated with the related firearms offense."  *Id.*

## C.   Sands

In September 2006 Sands was indicted in Kansas federal court on five counts arising from firearms violations and a conspiracy to distribute methamphetamine.  He was convicted by a jury on all counts and in September 2008 was sentenced to 420 months' imprisonment, to be followed by 10 years' supervised release.  We upheld the convictions and sentence on direct appeal.  *See United States v. Sands*, 329 F.

App'x 794, 796, 800–02 (10th Cir. 2009) (unpublished) (*Sands I*).  The district court later reduced Sands's sentence from 420 to 384 months based on a retroactive amendment to the drug-quantity guideline.  *See* USSG § 2D1.1.

In July 2020 Sands filed a pro se motion seeking compassionate release under § 3582(c)(1)(A).  The Federal Public Defender for the District of Kansas took on the representation and filed a supplemental brief on his behalf, seeking a reduction of his sentence to time served with five years' home confinement as a condition of supervised release.  Sands argued that his preexisting health conditions—including obesity, diabetes, asthma, hypertension, and sleep apnea—put him at high risk of serious disease or death should he contract COVID-19, and that those risk factors, coupled with an outbreak of the virus at his correctional facility, FCI Edgefield, constituted extraordinary and compelling reasons warranting his release.  In opposition to the motion the government conceded that his medical conditions "establish[ed] extraordinary and compelling reasons allowing for consideration of compassionate release," but argued that application of the § 3553(a) factors nevertheless required denial.  Sands R., Vol. 1 at 97.

The district court denied the motion.  *See United States v. Sands*, No. 06-20044-03-JAR, 2020 WL 6343303, at *4 (D. Kan. Oct. 29, 2020) (*Sands II*).  In light of the government's concession on the issue of extraordinary and compelling reasons, the court turned to the § 3553(a) factors and concluded that "the 384-month sentence remains sufficient, but not greater than necessary, to meet the sentencing factors in § 3553(a) and punish the offense involved."  *Id.* at *3–4.  The court noted the

seriousness of the offense (nearly two kilograms of methamphetamine were attributed to Sands), Sands's criminal history, and the need to "provide adequate deterrence [and] appropriate punishment." *Id*.

## III.   DISCUSSION

We first address the arguments advanced by Hald and Sands and explain why they do not warrant reversal.  We then address the issues raised by Wesley, again affirming the denial of relief.

### A.   Hald's and Sands's Motions

Hald and Sands both argue that the district court misinterpreted § 3582(c)(1)(A) by not considering the three prerequisites for relief in the proper order of step 1, step 2, and step 3, as we have labeled them in our precedents.  For the reader's convenience, we requote the pertinent provisions of the section, inserting bracketed numerals to identify the three steps:

> [T]he court, . . . upon motion of the defendant, . . . may reduce the term of imprisonment . . . , [3] after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> [1] extraordinary and compelling reasons warrant such a reduction . . .
>
> and [2] that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Hald and Sands contend that the statutory provision requires an inflexible, mandatory sequencing of the analysis of the three prerequisites, and that by bypassing what they call the *threshold* inquiry on the existence of extraordinary and compelling reasons,

the district court in both cases committed reversible error.  Our review of this legal issue is de novo.  *See McGee*, 992 F.3d at 1041.

We reject this argument of Hald and Sands.  Even assuming that their characterization of the district-court orders is correct and that both proceeded to consider the § 3553(a) factors (step three) before resolving, or at least assuming, the existence of extraordinary and compelling reasons (step one), there was no error.  We addressed this precise issue in both *McGee* and *Maumau*.  In *McGee* we stated that "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking *and do not need to address the others*." *Id.* at 1043 (emphasis added) (internal quotation marks omitted)*; see Maumau*, 993 F.3d at 831 n.4 (same).

Hald and Sands offer two principal responses to this language.[6]  First, they suggest that what *McGee* and *Maumau really* meant to say is that a district court may *assume* the existence of "extraordinary and compelling reasons" before continuing on to the § 3553(a) factors.  But that is not what we said.  Nor has that been said by the Sixth Circuit, whose opinions we discussed at length and followed in our two precedents.  In particular, in *United States v. Ruffin*, 978 F.3d 1000 (6th Cir. 2020), the district court had denied the defendant's § 3582(c)(1)(A) motion after finding that he had failed to satisfy *any* of the three requirements.  *See id.* at 1002–03.  Affirming,

---

[6] Although *McGee* and *Maumau* were filed after the close of briefing in these cases, Hald and Sands both addressed their effect at oral argument and in multiple letters submitted under Federal Rule of Appellate Procedure 28(j).

the Sixth Circuit neither decided *nor assumed* the existence of extraordinary and
compelling reasons, explaining that "we may affirm the denial of relief based on the
third discretionary rationale alone." *Id.* at 1006.

Second, Hald and Sands argue that the language in *McGee* and *Maumau*
allowing courts to deny § 3582(c)(1)(A) motions at any of the three steps without
addressing the others is nonbinding dicta. They have a point. Although we have no
doubt that the statements in those opinions were carefully considered by the panels
(and are therefore entitled to our respect), it is true that the sequence of the three
steps was "not necessarily involved nor essential to determination" of the issues in
either *McGee* or *Maumau*. *United States v. Barela*, 797 F.3d 1186, 1190 (10th Cir.
2015). We therefore must consider the statements as dicta. *See id*.

In any event, we agree with the statements. The language of § 3582(c)(1)(A)
certainly requires that relief be granted only if all three prerequisites are satisfied, but
it does not mandate a particular ordering of the three steps (much less the ordering
Hald and Sands urge). Since it mentions step three first, the natural meaning could
well be that the court is to first determine whether relief would be authorized by that
step and then consider whether the other two steps are satisfied. We think it
persuasive, if not binding, that our well-considered reading of the statutory language
in *McGee* declared that the three steps could be considered in any order. *See* 992
F.3d at 1044.

Moreover, and most importantly, there is no reason to mandate any particular

order for the three steps.[7]  If the most convenient way for the district court to dispose

---

[7] One reason to mandate that a particular issue be the first to be considered is that the issue is a jurisdictional one.  The court has no authority to address a nonjurisdictional merits issue if it lacks jurisdiction.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  But no party has argued in these appeals that step one is jurisdictional.  And in recent years the Supreme Court has been increasingly firm in limiting what statutory provisions should be considered jurisdictional.  As the Court wrote in *Sebelius v. Auburn Regional Med. Ctr.*, 568 U.S. 145, 153 (2013), "To ward off profligate use of the term 'jurisdiction,' we have adopted a 'readily administrable bright line' for determining whether to classify a statutory limitation as jurisdictional.  *Arbaugh* [*v. Y & H Corp.*, 546 U.S. 500, 516 (2006)].  We inquire whether Congress has 'clearly state[d]' that the rule is jurisdictional; absent such a clear statement, we have cautioned, 'courts should treat the restriction as nonjurisdictional in character.'  *Id.*, at 515–516."  *Accord Fort Bend County v. Davis*, 139 S. Ct. 1843, 1848–50 (2019).  Against this backdrop and in the absence of contrary controlling precedent, we decline to read a jurisdictional element into § 3582(c)(1)(A)'s "extraordinary and compelling reasons" requirement when the statute itself provides no indication (much less a "clear statement") to that effect.  We acknowledge that this circuit has reached the opposite conclusion with respect to a neighboring statutory provision, holding that § 3582(c)(2)'s requirement that the defendant "show he was sentenced based on a guideline range the Sentencing Commission lowered subsequent to defendant's sentencing" *is* a jurisdictional requirement that must be addressed first by the district court.  *United States v. C.D.*, 848 F.3d 1286, 1289–90 (10th Cir. 2017), *following United States v. White*, 765 F.3d 1240, 1244, 1245 n.3 (10th Cir. 2014), *following United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996); *see also United States v. Green*, 405 F.3d 1180, 1184 (10th Cir. 2005) (suggesting in dictum that each paragraph of § 3582(c) has a jurisdictional grant).  *But see United States v. Taylor*, 778 F.3d 667, 670 (7th Cir. 2015) ("clarify[ing] that district courts have subject-matter jurisdiction over—that is, the power to adjudicate—a § 3582(c)(2) motion even when authority to *grant* a motion is absent because the statutory criteria are not met").  But no precedent of this court has extended that holding to § 3582(c)(1)(A), and we decline to do so now, particularly in light of the apparent tension between that precedent and recent Supreme Court law.  *See C.D.*, 848 F.3d at 1289 n.2 (stating that whether § 3582(c)(2) contains a jurisdictional element "is certainly debatable" in light of *Auburn Regional* and other recent Supreme Court cases); *United States v. Shkambi*, 993 F.3d 388, 389–90 (5th Cir. 2021) (district court "plainly had jurisdiction over [defendant's] § 3582[(c)(1)(A)] motion" even though defendant had failed to demonstrate extraordinary and compelling reasons; "[the defendant] properly filed [his § 3582(c)(1)(A) motion] in a court that had the power to grant it.

of a motion for compassionate release is to reject it for failure to satisfy one of the steps, we see no benefit in requiring it to make the useless gesture of determining whether one of the other steps is satisfied.  Hald and Sands suggest that the existence of "extraordinary and compelling reasons" (step one) must be resolved first because that determination somehow informs the district court's § 3553(a) analysis at step three.  We are not persuaded.  They fail to explain how a finding of extraordinary and compelling reasons would factor into the § 3553(a) analysis.  To be sure, the various facts that would support a finding of such reasons are relevant to the § 3553(a) analysis.  But to the extent that they influence that analysis, it is irrelevant whether those facts meet the test of "extraordinary and compelling reasons."  Certainly, nothing in § 3553 itself requires a court to consider whether there are extraordinary and compelling reasons when it is determining the proper sentence to be imposed under § 3553(a).  And the massive body of case law directing how courts are to conduct their § 3553(a) analysis imposes no such requirement.

Hald and Sands rely on *Dillon v. United States*, 560 U.S. 817 (2010), in support of their argument that step one must first be considered, but we think that they read too much into that opinion.  In that case the Supreme Court addressed the application of § 3582(c)(1)(a)'s neighboring paragraph, § 3582(c)(2), which permits a district court to reduce the sentence of a defendant if a guideline on which the

---

. . . The district court got to the end and found [his] motion meritless. But that does not mean the district court suddenly lost the jurisdiction it previously exercised; it just means that [his] motion failed on the merits.").

defendant's original sentence was based had been amended so that the defendant's

sentencing guideline range would now be lower.[8]  There was no issue in that case

about whether the district court had addressed issues in the proper order.  The Court

was considering something altogether different.  Dillon's sentencing-guideline range

had been reduced by postsentencing amendments to the guidelines.  He argued that

§ 3582(c)(2) therefore entitled him to a resentencing hearing at which the guidelines

would be only advisory because the Supreme Court in *United States v. Booker*, 543

U.S. 220 (2005), had held that the Sixth Amendment prohibited the imposition of

mandatory guidelines on sentencing courts.  *See Dillon*, 560 U.S. at 819 (*Booker*

"rendered the Guidelines advisory to remedy the Sixth Amendment problems

associated with a mandatory sentencing regime.").  That is, he contended, *Booker*

always conferred on sentencing courts the authority to vary from what would be

required under the guidelines.

The Supreme Court rejected the contention, holding that the procedure to

reduce a sentence under § 3582(c)(2) is not a resentencing procedure and is not

---

[8]  Section 3582(c)(2) provides:
> The court may not modify a term of imprisonment once it has been
> imposed except that . . . in the case of a defendant who has been
> sentenced to a term of imprisonment based on a sentencing range that
> has subsequently been lowered by the Sentencing Commission pursuant
> to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the
> Bureau of Prisons, or on its own motion, the court may reduce the term
> of imprisonment, after considering the factors set forth in section
> 3553(a) to the extent that they are applicable, if such a reduction is
> consistent with applicable policy statements issued by the Sentencing
> Commission.

governed by *Booker*. *See id.* at 825–26, 828. In *Booker* the Court held that the mandatory-guideline regime violated the Sixth Amendment because the maximum sentence to which the defendant could be subjected depended on fact findings made by a judge under a preponderance-of-the-evidence standard, rather than on findings made by a jury beyond a reasonable doubt. *See Dillon*, 560 U.S. at 820. But the proceedings at issue in *Dillon* arose only after imposition of a final sentence consistent with *Booker* and were solely to permit a reduction from the original sentence. A reduced sentence could be imposed only if there had been a relevant postsentencing amendment to the guidelines. In the Court's words: "Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Id.* at 826. The Court described the statutory scheme as follows: "A court *must first* determine that a reduction is consistent with § 1B1.10 before it may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)." *Id.* (emphasis added). "[P]roceedings under [§ 3582(c)(2)]" thus have a significantly more "limited scope and purpose" than original sentencing proceedings and "do not implicate the interests identified in *Booker*." *Id.* at 828; *see id.* ("[P]roceedings under § 3582(c)(2) do not implicate the Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt. Taking the original sentence as given, any facts found by a judge at a § 3582(c)(2) proceeding do not serve to increase the prescribed range of punishment[.]").

Hald and Sands fasten on *Dillon*'s description of the procedure under § 3582(c)(2), arguing not only that its "must first" language mandates a particular order of operations under that statute, but that we should require that same order of analysis in cases under § 3582(c)(1)(A) as well. As previously noted, however, the Court in *Dillon* was not resolving whether the district court had improperly taken matters out of order. It was conceptualizing proceedings under § 3582(c)(2) to distinguish them from original sentencing proceedings. The important conceptual distinction was that relief was permissible under the provision only if a final sentence had previously been imposed and there had been a relevant postsentencing amendment to the guidelines.

It is not at all unusual for an appellate court, including the Supreme Court, to conceptualize a decision as proceeding in a certain order (step 1, step 2, etc.), yet permit the ultimate decisionmaker—ordinarily the trial court—to proceed in a different order if more convenient and efficient. A few examples will suffice.

First, in *Smith v. Robbins*, 528 U.S. 259 (2000), the Court stated that to establish an ineffective-assistance-of-counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984), "Respondent *must first* show that his counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. *If* [*Respondent*] *succeeds* in such a showing, he then has the burden of demonstrating prejudice." *Id.* at 285 (emphasis added) (citation omitted). But in *Strickland* itself the Court made it clear that courts need not follow the rigid order of

20

operations suggested by the language in *Robbins*. *See Strickland*, 466 U.S. at 697

("Although we have discussed the performance component of an ineffectiveness

claim prior to the prejudice component, there is no reason for a court deciding an

ineffective assistance claim to approach the inquiry in the same order or even to

address both components of the inquiry if the defendant makes an insufficient

showing on one."); *Robbins*, 528 U.S at 286 n.14 (noting this flexibility).

Similarly, the Court in *Central Hudson Gas & Electric Corp. v. Public Service

Commission of New York*, 447 U.S. 557 (1980) stated that, in commercial-speech

cases, "[*a*]*t the outset, we must* determine whether the expression is protected by the

First Amendment." *Id.* at 566 (emphasis added). Yet in *United States v. Edge

Broadcasting Co.*, 509 U.S. 418 (1993), the Court found it unnecessary to resolve

that question. *See id.* at 425 ("The Government argues first that gambling implicates

no constitutionally protected right . . . . The Court of Appeals did not address this

issue and neither do we, for the statutes are not unconstitutional [even] under the

standards of *Central Hudson* applied by the courts below."). And although the Court

has said that a "public employee's speech is entitled to *Pickering* [*v. Bd. of Educ. of

Township High School Dist. 205, Will Cty.*, 391 U.S. 563 (1968)] balancing *only

when* the employee speaks as a citizen upon matters of public concern," *City of San

Diego v. Roe*, 543 U.S. 77, 83 (2004) (per curiam) (emphasis added) (internal

quotation marks omitted), which is a "threshold inquiry," *id.* at 82, it bypassed that

inquiry altogether in *Waters v. Churchill*, 511 U.S. 661 (1994), *see id.* at 680 ("Even

if [the fired employee's] criticism . . . was speech on a matter of public concern—

21

*something we need not decide*—the potential disruptiveness of the speech as reported was enough to outweigh whatever First Amendment value it might have had." (emphasis added)).

To be sure, there are some contexts in which the order of operations *is* important, and courts err by disregarding that order. But when the Supreme Court has insisted on a particular order, it has explained why the order is important. For instance, under the since-rescinded rule of *Saucier v. Katz*, 533 U.S. 194 (2001), *abrogated in pertinent part by Pearson v. Callahan*, 555 U.S. 223 (2009), courts ruling on qualified immunity were required to decide the existence of a constitutional violation before proceeding to consider whether, if a right had indeed been violated, that right was clearly established. *See id*. at 201. The Court expressed concern that if qualified immunity were regularly resolved on the clearly-established prong, the development of constitutional law would suffer. *See id.* (explaining that by first addressing the existence of a constitutional violation, courts facilitate "the law's elaboration from case to case" and that "[t]he law might be deprived of this explanation were a court simply to skip ahead to the question whether the law clearly established that the officer's conduct was unlawful"). Likewise, in an initial sentencing proceeding, "a district court should begin . . . by correctly calculating the applicable Guidelines range" before proceeding to consider the § 3553(a) factors and the parties' arguments for any departure. *Gall v. United States*, 552 U.S. 38, 49 (2007); *see United States v. Maynard*, 984 F.3d 948, 956 (10th Cir. 2020). Calculation of the guidelines range at the outset is essential to inform the sentencing

judge of what a typical sentence is for similar offenses and similar defendants.  *See*

*Gall*, 522 U.S. at 49 ("As a matter of administration and to secure nationwide

consistency, the Guidelines should be the starting point and the initial benchmark.");

*Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016) ("The Guidelines are

the framework for sentencing and anchor the district court's discretion. Even if the

sentencing judge sees a reason to vary from the Guidelines, if the judge uses the

sentencing range as the beginning point to explain the decision to deviate from it,

then the Guidelines are in a real sense the basis for the sentence." (citations, ellipsis,

and internal quotation marks omitted)); 18 U.S.C. § 3553(a)(6) (sentencing court

must consider "the need to avoid unwarranted sentence disparities among defendants

with similar records who have been found guilty of similar conduct").

Perhaps there is a reason why a court acting under § 3582(c)(2) must first

address whether the defendant's guideline range has been changed by a

postsentencing amendment.  (After all, the court needs to calculate the guideline

sentencing range before analyzing the effect of the § 3553(a) factors.)  We will leave

that to further clarification by the Supreme Court.  But even if there is justification

for requiring a specific order of analysis under that statutory provision, we see no

justification for requiring that the district court proceed under § 3582(c)(1)(A) in the

manner demanded by Hald and Sands.

One last comment on this issue.  We emphasize that we are not saying that a

court can deny compassionate-release relief on the ground that release is not

appropriate under § 3553(a) if the court has not considered the facts allegedly

establishing extraordinary and compelling reasons for release.  As we have stated above, those facts are relevant to the § 3553(a) analysis.  But Hald and Sands have not argued this type of error, and the records in the two cases do not support such a claim.  *See Hald*, 2020 WL 5548826, at *3 ("At this point, Defendant has served approximately half of his sentence as he has served 104 months. Reducing his sentence by half, *even during the ongoing COVID-19 pandemic*, does not further sentencing objectives. The Court remains convinced that 210 months is an appropriate sentence." (emphasis added)); *Sands II*, 2020 WL 6343303, at *4 ("At this time, Defendant has only served approximately half of his sentence and is not expected to be released until 2033. *Although Defendant has underlying conditions increasing his risk of serious complications should he contract COVID-19*, the reduction of Defendant's sentence in such a significant manner would not afford adequate deterrence or punishment." (emphasis added)).

We therefore conclude that the district courts committed no legal error in resolving the motions by Hald and Sands by first addressing the § 3553(a) factors. Because Hald does not argue that the district court abused its discretion in how it weighed the § 3553(a) factors, we affirm its denial of his motion.[9]

---

[9]  As Hald appears to acknowledge, the district court cannot have erred in "fail[ing] to conduct the second step of the § 3582(c)(1)(A) analysis," Hald Aplt. Br. at 24, when we have held that there is no applicable policy statement, *see McGee*, 992 F.3d at 1050.

Before we can affirm the district court's denial of Sands's motion, however, we must also address some other issues he has raised with respect to the court's order. First, Sands argues that the district court erred by failing to mention his "asthma as a severe medical condition," by "misstat[ing] the number of counts of conviction," and by "cit[ing] [his] offense level as 38, without acknowledging that [it] was retroactively reduced to 36." Sands Aplt. Br. at 24 (citation omitted). Second, he claims that the district court erred when it mistakenly referred to the first § 3553(a) factor as the "nature and circumstances of the offense and the history and characteristics of the *offense*," *Sands II*, 2020 WL 6343303, at *3 (emphasis added), rather than "the nature and circumstances of the offense and the history and characteristics of the *defendant*," 18 U.S.C. § 3553(a)(1) (emphasis added). Third, he contends that the district court "ignored" and "never accurately acknowledged" his arguments for mitigation, including reclassification of his drug-possession conviction, postsentencing rehabilitation, and letters submitted by family and friends. Sands Aplt. Br. at 25. Finally, he argues that the district court erred by failing to "seriously consider" that his request for compassionate release included placement on home confinement as a condition of his current five-year term of supervised release and the revision of his term of supervised release to add an additional five years thereafter. *Id.*; *see* Sands R., Vol. 1 at 70–71.

We are not persuaded. This court is not in the business of grading the papers of our very busy colleagues on the trial bench. Any reasonable reading of the district court's opinion would conclude that it properly performed its job in assessing

25

Sands's arguments.  Regarding Sands's first set of alleged errors, there would have been little point in the district court's mentioning Sands's asthma since it had accepted his contention that his "underlying conditions increase[ed] his risk of serious complications should he contract COVID-19."  *Sands II*, 2020 WL 6343303, at *4.  Whether Sands's very serious drug and firearms offenses were prosecuted in five counts or six counts is so obviously inconsequential that the court's miscount of the numbers (although its opinion listed the five counts of conviction) is no more reflective of the thoroughness of the court's deliberations than a misspelling.  Sands has waived any argument based on the district court's failure to mention the retroactive reduction of his offense level by not making any effort to explain how that failure affected the court's decision, particularly when the court's opinion twice mentioned the later reduction in his sentence.  And the district court's misquote of the final word of § 3553(a)(1)—substituting "offense" for "defendant"—after correctly quoting the language earlier in its opinion undoubtedly is a simple typographical error.

Nor has Sands established that the district court erred by failing to mention some of his mitigation arguments or by failing to adequately consider his suggestion of supervised release on the condition of home confinement.  To be sure, when imposing the original sentence, the district court must provide a statement of reasons.  *See* 18 U.S.C. § 3553(c).  But as we noted in *United States v. Chavez-Meza*, 854 F.3d 655, 658 (10th Cir. 2017), *aff'd* 138 S. Ct. 1959 (2018), the provision at issue in that case, § 3582(c)(2)—which is identical to § 3582(c)(1) in this respect—contains no

such requirement.  And since at initial sentencing we ordinarily do not require

"specific discussion of Section 3553(a) factors . . . for sentences falling within the

ranges suggested by the Guidelines," *United States v. Ruiz-Terrazas*, 477 F.3d 1196,

1202 (10th Cir. 2007), it would seem to follow that nothing more detailed is required

to justify imposing or maintaining under either paragraph of § 3582(c) a sentence

within the recommended range of the applicable guidelines, *see Chavez-Meza*, 854

F.3d at 659 (addressing § 3582(c)(2)).  In any event, "[a]t bottom, the sentencing

judge need only set forth enough to satisfy the appellate court that [s]he has

considered the parties' arguments and has a reasoned basis for exercising [her] own

legal decisionmaking authority."  *Chavez-Meza*, 138 S. Ct. at 1964 (internal

quotation marks omitted).  And that is certainly the case here.  We think that the

points raised by Sands in mitigation are hardly such "substantial contentions" as to

demand a written explanation by the court.  *United States v. Lopez-Flores*, 444 F.3d

1218, 1222 (10th Cir. 2006).  The court's failure to mention these matters in its

opinion can be easily explained by their being "typical" and therefore already

incorporated into the Sentencing Commission's reasoning (adopted by the sentencing

court) of what the usual sentencing range should be.  *Chavez-Meza*, 138 S. Ct. at

1964 (internal quotation marks omitted).  Sands does not explain why the contents of

the letters from family and friends provide convincing reasons for reducing his

sentence (certainly not by half); the only evidence he mentions of postsentencing

rehabilitation is that he served "as a UNICOR maintenance worker, and had

completed a number of BOP programs (including a drug education program)," Aplt.

Br. at 9; and he has failed to explain the relevance of the fact that § 401(a) of the

First Step Act of 2018, Pub. L. 115–391, 132 Stat. 5194, 5220–21 (which does not

apply to persons previously sentenced, *see id.* § 401(c), 132 Stat. 5221) would reduce

the minimum sentence that could be imposed, especially when his guidelines range

and sentence (384 months after the 2015 reduction in his sentence) were significantly

above the previous statutory minimum of 300 months. As for Sands's suggestion of

home confinement, his contention is only that the sentencing judge failed to

"seriously consider" the suggestion, *id.* at 25, which amounts to nothing more than a

complaint that the judge did not agree with him.

Having disposed of Sands's remaining arguments, we affirm the district

court's order denying his request for compassionate release under § 3582(c)(1)(A).

### B.     Wesley's Motion

Proceeding pro se, Wesley raises several arguments in his appeal from the

district court's denial of his request for compassionate release and denial of his

motion for reconsideration.[10]  First, he contends that "[t]he district court abused its

discretion in determining that [he] had not demonstrated extraordinary and

compelling circumstances to support compassionate release." Wesley Aplt. Br. at 3a.

But the district court ultimately did not rely on that determination. In denying

Wesley's motion for reconsideration, the district court stated that "even if the court

---

[10]  Because Wesley is a pro se litigant, we construe his appellate "pleadings and other
papers liberally and hold them to a less stringent standard than those drafted by
attorneys." *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007).

found that Mr. Wesley had established extraordinary and compelling reasons for release, the court would nonetheless deny the motion based on the § 3553(a) factors." *Wesley III*, 2020 WL 5848897, at *2.  As stated above, if a district court properly denies compassionate release because of the § 3553(a) factors, it is irrelevant how the court viewed whether the defendant had demonstrated extraordinary and compelling circumstances.

Next, Wesley argues that the district court abused its discretion in its consideration of the § 3553(a) factors, both by failing to adequately explain its reasoning and by incorrectly weighing the individual factors.  But, for the reasons stated above in rejecting Sands's similar argument, we see no merit to the adequate-explanation argument.  *See Chavez-Meza*, 138 S. Ct. at 1964; *Chavez-Meza*, 854 F.3d at 658–59; *Lopez-Flores*, 444 F.3d at 1222.  The district court listed the six potentially applicable § 3553(a) factors[11] before concluding that they required denial of Wesley's motion.  *See Wesley III*, 2020 WL 5848897, at *2.  We have no reason to doubt that the district court in fact considered those factors, and nothing more was required.  And the district court was not required to consider, as Wesley argues, that the applicable Sentencing Commission policy statement, USSG § 1B1.13, supports compassionate release because he does not pose "a danger to the safety of any other

---

[11]  The seventh factor, "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is inapplicable to Wesley.

person or to the community." This court has held that § 1B1.13 is inapplicable to § 3582(c)(1)(A) motions filed directly by defendants. *See McGee*, 992 F.3d at 1050.

We also reject Wesley's claim that the district court abused its discretion in analyzing any of the individual § 3553(a) factors. Because the weighing of the § 3553(a) factors is committed to the discretion of the district court, we cannot reverse "unless we have a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Chavez-Meza*, 854 F.3d at 659 (internal quotation marks omitted). Since the court had determined that Wesley was "accountable for more than 150 kilograms of cocaine" and had possessed a firearm, *Wesley III*, 2020 WL 5848897, at *3, we see no error in the court's decision that the seriousness of the offense and the need to provide adequate deterrence weighed against compassionate release and see no reason why these factors should necessarily be outweighed by Wesley's relatively minor preexisting criminal history or his unspecified efforts at rehabilitation while in prison.

Finally, we reject Wesley's argument that the denial of relief for him created an "unwarranted sentenc[ing] disparit[y] among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(c)(6), because of grants of compassionate release to defendants Jeffrey Plank, Kenneth Rayford, and James Riccardi by the same judge who denied release to him. *See United States v. Plank*, No. 17-20026-JWL, 2020 WL 3618858, at *1 (D. Kan. July 2, 2020); *United States v. Rayford*, No. 09-20143-01-JWL, 2020 WL 4335013, at *1 (D. Kan. July 28, 2020);

*United States v. Riccardi*, No. 02-20060-JWL, 2020 WL 4260636, at *1 (D. Kan. July 24, 2020).  A comparison of the orders granting relief to Plank and denying relief to Wesley show that the court considered Wesley's criminal activity to be much more serious than Plank's.  And both Rayford and Riccardi had already served a much greater percentage of their sentences than Wesley had.  *Compare Rayford*, 2020 WL 4335013, at *1 (projected 15 months remaining on 168-month sentence) *and Riccardi*, 2020 WL 4260636, at *1 (projected 13 months remaining on 262-month sentence) *with Wesley III*, 2020 WL 5848897, at *1 (projected 160 months remaining on 360-month sentence).  We are not left with "a definite and firm conviction that the [district] court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."  *Chavez-Meza*, 854 F.3d at 659 (internal quotation marks omitted).  If anything, the judge's grant of compassionate release in three other cases increases our confidence that he has given careful attention to the specific facts in each case.  Accordingly, we affirm.

## IV.   CONCLUSION

We **AFFIRM** the denials by the district courts of Hald's motion for early release, Sands's motion for early release, and Wesley's motions for early release and for reconsideration.  We **GRANT** Wesley's motion to proceed *in forma pauperis*.