IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-20168-02-JWL |
| | ) | |
| MONTERIAL WESLEY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## **MEMORANDUM AND ORDER**

Defendant Monterial Wesley was indicted on twelve counts relating to a conspiracy to distribute cocaine and cocaine base in and around Kansas City. In April 2009, after the jury was impaneled but before any evidence was presented, Mr. Wesley pled guilty to four counts of the indictment (without the benefit of a plea agreement), including conspiracy to manufacture, to possess with intent to distribute, and to distribute fifty grams or more of cocaine base and to possess with intent to distribute and to distribute five kilograms or more of cocaine. He went to trial on the eight other counts, along with a number of co-defendants, and was subsequently convicted on two of them.

In October 2009, the court sentenced Mr. Wesley to 360 months imprisonment. This sentence was driven by the significant quantity of drugs attributed to Mr. Wesley and the inherent violence associated with the related firearms offense. Specifically, the court found that Mr. Wesley was accountable for more than 150 kilograms of cocaine which

corresponded to the highest base offense level at the time and, as noted by the Tenth Circuit, was a conservative estimate. *United States v. Wesley*, 423 Fed. Appx. 838, 840 (10th Cir. 2011) (district court's "conservative estimate" concerning drug quantity was based on "conservative, cautious interpretations" of the evidence). In holding Mr. Wesley accountable for more than 150 kilograms of cocaine, the court relied on the trial testimony of Mr. Thomas Humphrey and the sentencing hearing testimony of Mr. Cruz Santa Anna, both of whom the court found credible. Mr. Wesley's base offense level was increased based on Mr. Wesley's possession of a firearm, for a total offense level of 40. The court rejected Mr. Wesley's argument that he was entitled to a two-point reduction for acceptance of responsibility because he pled guilty to the most serious charge in the indictment. With a criminal history category of II, the resulting guideline range was 324 to 405 months. As noted, the court sentenced Mr. Wesley to 30 years. The Circuit affirmed the sentence on direct appeal. *United States v. Wesley*, 423 Fed. Appx. 838, 839 (10th Cir. 2011). He is presently scheduled for release in February 2034.

This matter is now before the court on Mr. Wesley's second motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A) (doc. 1993), a motion that has been filed through counsel.[1] The Tenth Circuit has endorsed a three-step test for district courts to utilize in connection with motions filed under § 3582(c)(1)(A). *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021) (citing *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir.

---

[1] Mr. Wesley's first motion was filed in May 2020 and was based on Mr. Wesley's argument that his medical conditions placed him at an elevated risk of harm from COVID-19. The court denied the motion and the Circuit affirmed that decision. *United States v. Hald*, 8 F.4th 932 (10th Cir. 2021).

2

2020)).  Under that test, a court may reduce a sentence if the defendant administratively exhausts his or her claim and three other requirements are met: (1) "extraordinary and compelling" reasons warrant a reduction;[2] (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission;" and (3) the reduction is consistent with any applicable factors set forth in 18 U.S.C. § 3553(a).  *Id.*[3]  A court may deny compassionate-release motions when any of the three prerequisites is lacking and need not address the others. *Id.* at 1043.  But when a district court grants a motion for compassionate release, it must address all three steps.  *Id.*  As will be explained, defendant has not come forward with extraordinary and compelling reasons sufficient to warrant a reduction in his sentence.  The court, then, declines to address the other prerequisites.

In his motion, Mr. Wesley maintains that extraordinary and compelling reasons exist in this case for a sentence reduction.  First, he argues that the prosecutor in this case, AUSA Terra Morehead, solicited false testimony about drug quantities in this case from at least three witnesses and that one of those witnesses has admitted to testifying falsely about drug quantity in light of threats made by Ms. Morehead. Second, Mr. Wesley argues that his sentence is excessive and disproportionate when compared to co-defendants who did not go to trial and when compared to, as he characterizes them, more culpable cooperating co-conspirators.   Mr. Wesley seeks an evidentiary hearing to resolve his prosecutorial

---

[2] A district court has the authority to exercise its discretion to independently determine the existence of "extraordinary and compelling reasons."  *McGee*, 992 F.3d at 1043-44.
[3] The government does not dispute that Mr. Wesley has satisfied the statute's exhaustion requirement such that this court has jurisdiction to resolve the merits of Mr. Wesley's motion.

misconduct allegations and, putting aside those allegations, a sentence reduction to 15 years based on his argument that his sentence is comparatively excessive and disproportionate.

*Prosecutorial Misconduct*

The primary thrust of Mr. Wesley's motion concerns conduct by the prosecutor in this case, AUSA Terra Morehead.  In support of his motion, Mr. Wesley has come forward with evidence that Ms. Morehead engaged in misconduct in connection with Mr. Wesley's jury trial and sentencing.  Specifically, Mr. Wesley submits evidence that a witness who testified against Mr. Wesley lied about the nature of his dealings with Mr. Wesley and testified that he sold cocaine to Mr. Wesley when in fact he sold only marijuana to Mr. Wesley.  He states under penalty of perjury that Ms. Morehead knew that his testimony was false but that Ms. Morehead wanted him to testify that he sold cocaine to Mr. Wesley. This witness also states that Ms. Morehead wanted the witness to "add weight" to the drug quantities in his trial testimony, but he refused to do so.  Mr. Wesley also submits evidence that another witness who testified against Mr. Wesley was pressured by Ms. Morehead to "to make the drug weight more than it really was" but that he refused to do so and that his trial testimony was truthful despite Ms. Morehead's efforts.  A third individual indicates that Ms. Morehead asked him to testify to buying more cocaine from Mr. Wesley than he actually did.  This witness, however, did not testify at trial.

Mr. Wesley asserts that the evidence concerning these witnesses significantly undermines the reliability of the drug quantities attributed to Mr. Wesley by the court in its

relevant conduct calculations and requires an evidentiary hearing to explore whether Ms. Morehead pressured Mr. Humphrey and Mr. Santa-Anna to falsely inflate drug quantities in their testimony and, if so, whether they in fact testified falsely.  Mr. Wesley further supports his motion with evidence that Ms. Morehead, in the context of other cases, has a practice of engaging in abusive, "reprehensible," and untruthful conduct.  *See, e.g.*, United States v. Orozco, 916 F.3d 919, 924 (10th Cir. 2019) (describing district court's conclusion that AUSA Morehead had violated the defendant's Sixth Amendment rights by intimidating a witness); *CCA Recordings 2255 Litig. v. United States*, 2021 WL 5833911, at *24 (D. Kan. Dec. 9, 2021) (court concluded that AUSA Morehead engaged in "reprehensible" conduct when she intruded into attorney-client relationship by intentionally becoming privy to attorney-client phone call).  According to Mr. Wesley, all of this evidence undermines the reliability of the drug quantities attributed to Mr. Wesley— quantities that unquestionably drove his 30-year sentence—and supports a reduction in his sentence.

The threshold issue presented by Mr. Wesley's motion is whether his arguments and evidence about Ms. Morehead's conduct—and, more specifically, his express assertion that Ms. Morehead's conduct "undermine[d] the constitutional integrity of the trial and sentencing"—can be remedied under 18 U.S.C. § 3582(c)(1)(A).  The government, in response to Mr. Wesley's motion, contends that Mr. Wesley's argument concerning Ms. Morehead can only be pursued through 28 U.S.C. § 2255.  In pertinent part, a § 2255 motion is one "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255.

5

such that the court must dismiss this aspect of the motion as an unauthorized successive §2255 petition. *See United States v. Harper*, 545 F.3d 1230, 1232 (10th Cir. 2008) (court must either dismiss unauthorized successive § 2255 petition for lack of jurisdiction or transfer it to the Tenth Circuit for a determination whether the successive petition should be permitted).  The government further contends that the court should not transfer the motion to the Circuit because Mr. Wesley's claim of prosecutorial misconduct "lacks specificity tied to the alleged perjured testimony presented to this Court."  As will be explained, the court agrees with the government that Mr. Wesley's claim, which clearly alleges that he is entitled to release because his sentence was based on the unconstitutional acts of the prosecutor in this case, must be asserted in the context of a § 2255 petition. Because defendant's motion unquestionably attacks the validity of his conviction, as opposed to asserting a defect in the integrity of the habeas proceeding, the motion is subject to authorization under § 2255(h).  The court, then, dismisses this aspect of the motion for lack of jurisdiction.  The court need not address whether to transfer the motion to the Circuit because Mr. Wesley, who is represented by experienced counsel, asserts that there is no mechanism to transfer his § 3582(c) motion and clearly does not desire to take this claim to the Circuit under § 2255.

In support of his assertion that his claim that Ms. Morehead solicited false testimony about drug type and weight is properly resolved in the context of these § 3582(c) proceedings, Mr. Wesley directs the court to just four district court cases.  None of these cases are persuasive to the court on this issue.  In *United States v. Jackson*, an unpublished decision from the Eastern District of California dated June 21, 2021, the district court

simply checked the "granted" box on a form order concerning the defendant's motion for sentence reduction under § 3582(c)(1)(A). While Mr. Wesley has submitted the defendant's corresponding 35-page motion for sentence reduction, that motion contains a number of distinct bases for relief (indeed, most of the motion is dedicated to a COVID-19 outbreak at the defendant's facility and the defendant's numerous chronic health conditions) and the judge's order does not indicate what reason or combination of reasons warranted relief. Thus, the mere fact that the defendant argued for a reduction in part because, according to the defendant, the judge improperly relied on "biased and unreliable" co-conspirator testimony in attributing drug quantities to defendant does not suggest that the court credited that argument.

Mr. Wesley also relies on two cases where the underlying criminal convictions were based on undercover sting operations—*United States v. Steele* and *United States v. White*. In *United States v. Steele*, 2021 WL 2711176 (D. Kan. July 1, 2021), this court granted the compassionate release motion of the defendant based on numerous factors including a change in the mandatory minimum sentence from 20 years to 10 years and the defendant's age, deteriorating health, rehabilitative efforts and clean disciplinary record. While Mr. Wesley contends that the court also relied on the fact that the defendant presented a "viable entrapment defense to the jury in light of certain government conduct relating to the underlying crimes," the court mentioned this fact only in connection with its analysis of the § 3553(a) factors and not as an extraordinary and compelling reason for the reduction. And while the court appropriately described Mr. Steele as a "scoundrel" who served over

12 years for operating a "small time criminal ring," the same cannot be said about Mr. Wesley.

The defendant in *United States v. White,* an unpublished case from the Northern District of Illinois*,* was convicted in connection with a fake stash house sting orchestrated by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).   By way of background, the ATF's "controversial and now-abandoned practice of conducting fake stash house stings" involved enticing unsophisticated, often desperate individuals (and typically poor people of color) into "conspiring to rob fictitious stash houses of fictitious drugs or money operated by fictitious drug dealers." *United States v. Paxton*, No. 13 CR 0103, 2018 WL 4504160, at *1 (N.D. Ill. Sept. 20, 2018); *Conley v. United States*, 5 F.4th 781 (7th Cir. 2021).   As described by the Seventh Circuit, because the stash house is fictional, the government "decides which and what quantity of drugs it will have" and, by manipulating the amount and type of drugs "in" the fictitious stash house, has nearly unfettered ability to control the defendant's sentence.   *United States v. Conley*, 875 F.3d 391, 394 (7th Cir. 2017).   The defendant in *White* was the least culpable defendant and received a mandatory minimum of 25 years despite his minimal participation based on the fictitious circumstances described by the undercover ATF agent.   In granting the defendant's motion for compassionate release, the court in *White* noted the unique circumstances of the defendant's prosecution and conviction and highlighted that fake stash house cases are "the types of cases where compassionate release is warranted based on the injustice and unfairness of a prosecution and resultant sentence."   The unique facts of the *White* decision render it distinguishable from Mr. Wesley's case.

8

The last case referenced by Mr. Wesley in support of his motion is *United States v. Williams*, an unpublished decision from the Central District of California dated July 19, 2021. The district court in that case granted the defendant's motion for compassionate release under § 3582(c)(a)(A) based on the defendant's evidence that his trial counsel provided ineffective assistance at trial and, more importantly, in the context of advising the defendant on whether to proceed to trial or pursue a plea agreement. While the court had previously rejected the defendant's 2255 petition based on ineffective assistance claims, the defendant presented new information in his 3582(c) proceedings that his counsel never advised him that he could plead guilty, misrepresented the strength of the government's case, never tried to negotiate a plea agreement, and led him to believe the case against him would be dismissed for lack of evidence. According to the court, had the defendant been advised by competent counsel, he would have pled guilty and would have already been released from custody like his co-defendants who entered guilty pleas.

The *Williams* case is somewhat difficult to analyze because it is unclear from the district court's memorandum and order whether the government disputed the defendant's evidence regarding his trial counsel. The motion was resolved without oral argument, which suggests that the government did not dispute the evidence. Regardless, while the court, distinguishing the defendant's prior § 2255 petition, stated that the defendant was not raising claims of ineffective assistance to undermine his conviction, but only "to argue why his motion should be granted," this court is not persuaded that those claims were appropriately resolved in the context of a § 3582(c) motion. And the court is not prepared to permit Mr. Wesley to assert in these proceedings what is undoubtedly a Sixth

Amendment claim challenging his conviction and sentence based on an isolated unpublished decision from the Central District of California.

The court, then, puts aside the cases set forth by Mr. Wesley in support of his motion and begins its own analysis with a Tenth Circuit opinion that, albeit unpublished and not referenced by the parties here, is relevant to the issue here.  In *United States v. Read-Forbes*, 843 Fed. Appx. 131 (10th Cir. 2021), the defendant sought compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on, among other things, her claim that the government's conduct in her underlying criminal proceeding (specifically, the government's possession of recorded phone calls between her and her attorneys) violated her Sixth Amendment rights. On appeal, the Circuit refused to address the claim, noting that "federal habeas corpus proceedings are the exclusive remedy for a prisoner 'claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution.'"  *Id*. at 134 n.2.  In so noting, the Circuit cited the Supreme Court's decision in *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  In *Preiser*, the Supreme Court held that habeas corpus is the exclusive remedy when a prisoner asserts a claim that "goes directly to the constitutionality of [the movant's] physical confinement itself and seeks either immediate release from that confinement or the shortening of its duration." *Id* at 489.

Mr. Wesley suggests that even though his claim is one that could be asserted under 28 U.S.C. § 2255, he can still properly raise it under 18 U.S.C. § 3582(c) in light of the court's broad discretion to fashion relief under that statute.  According to Mr. Wesley, the Circuit in *McGee* and *Maumau* implicitly recognized that certain claims could properly be asserted under both § 2255 and § 3582(c).  A reading of those cases, however, reflects that

the defendants' § 2255 and § 3582(c) proceedings were substantively distinct.  In *McGee*, the defendant's § 2255 claim was based on his argument that his sentence was unconstitutional in light of state law changes that occurred after his federal conviction and sentence.  In his subsequent § 3582(c) proceedings, he asserted that he was entitled to a sentence reduction based on a number of factors, including the fact that his sentence would be substantially lower in light of the First Step Act's reduction of the mandatory minimum sentence under § 841(b)(1)(A).  The defendant in *Maumau* asserted in his § 2255 proceedings that his state convictions did not qualify as valid § 924(c) predicates under the unconstitutional residual clause.  In contrast, the defendant sought a sentence reduction under § 3582(c) for a number of reasons, including the First Step Act's elimination of § 924(c)'s stacking provision.  Neither *McGee* nor *Maumau* suggests that Mr. Wesley's prosecutorial misconduct claim can be asserted under both § 2255 and § 3582(c).

And despite Mr. Wesley's suggestion to the contrary, even though the broad language of § 3582(c)(1)(A) seems to cover his claim that, in his words, his sentence was "artificially inflated" due to prosecutorial misconduct, the Supreme Court in *Preiser* cautioned that the more specific federal habeas corpus statute is the "exclusive" remedy in situations where it "so clearly applies."  411 U.S. at 489.  In *Preiser*, state law prisoners who alleged that they were deprived of good-conduct credits without due process of law brought actions under 42 U.S.C. § 1983.  The defendants in that case conceded that they could have proceeded under 28 U.S.C. § 2254, but argued that they were nonetheless entitled to pursue their claims under the "broad remedial protections" of the civil rights statute because that statute clearly covered their claims.  *Id*. at 488-89.

11

The Supreme Court rejected that argument and held that § 1983 was not a permissible alternative to the traditional remedy of habeas corpus and that when a state prisoner "is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." Id. at 500. As the Court explained:

> Congress clearly required exhaustion of adequate state remedies as a condition precedent to the invocation of federal judicial relief under those laws. It would wholly frustrate explicit congressional intent to hold that the respondents in the present case could evade this requirement by the simple expedient of putting a different label on their pleadings. In short, Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983.

Id. at 489-90. Similarly, Mr. Wesley here seeks to avoid the stringent requirements of § 2255(h) by reframing his Sixth Amendment prosecutorial misconduct claim as one for "discretionary" relief under the compassionate release statute. He urges that he is not claiming that his conviction is invalid or that his sentence is unlawful. But despite his efforts to cast his claim as one for a discretionary reduction, it is clear that Mr. Wesley asserts—as he must—that Ms. Morehead's conduct as alleged renders his conviction and sentence unconstitutional. Indeed, even Mr. Wesley asserts in his motion that the evidence he has marshaled about Ms. Morehead undermines "the constitutional integrity of the trial and sentencing" and that whether Ms. Morehead "suborned perjury or just refused to correct false testimony, the result is the same: an unconstitutional proceeding." Doc. 1993 at 20. Thus, regardless of how hard Mr. Wesley tries to sidestep the issue, his claim is a

constitutional challenge to his underlying conviction and sentence that must be pursued through the federal habeas corpus statute.

For the foregoing reasons, the court concludes that Mr. Wesley's claim that the prosecutor in this case suborned perjury that resulted in an increased or inflated sentence falls squarely within § 2255's ambit. *See United States v. Williams*, 2020 WL 6059738, at *5 (D. Kan. Oct. 14, 2020)  (compassionate release provision in § 3582(c)(1)(A) does not authorize relief based on a legal challenge to a defendant's conviction or sentence; claim that government violated defendant's Sixth Amendment rights would not be considered in § 3582(c) proceedings); *United States v. Warren*, 2020 WL 5253719, at *4 (D. Kan. Sept. 3, 2020) (§ 2255 motion, not compassionate release motion under § 3582, was appropriate avenue to address prosecutorial misconduct based on recording of defendant's conversations with counsel).  The court will not consider this claim in analyzing whether Mr. Wesley has shown extraordinary and compelling reasons for release.

To the extent the court must assess whether to grant or deny a certificate of appealability (COA) to Mr. Wesley in connection with any appeal of the court's dismissal of Mr. Wesley's § 3582(c) motion as a successive § 2255 petition, the court declines to issue a COA.  To obtain a COA where, as here, the court has dismissed a filing on procedural grounds, the movant must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The court need not address the constitutional question if it concludes that reasonable jurists would not debate

the court's resolution of the procedural one. *Id*. at 485. Because reasonable jurists would not debate the correctness of this court's conclusion that this aspect of Mr. Wesley's § 3582(c) motion must be construed as an unauthorized second § 2255 petition, the court declines to issue a COA.

*Excessive and Disproportionate Sentence*

Mr. Wesley contends that his 30-year sentence is excessively long and disproportionate compared to his co-defendants who chose not to go to trial and compared to, as described by Mr. Wesley, more culpable cocaine suppliers who testified for the government.  The court begins with what Mr. Wesley calls the "trial penalty" that he received for insisting on his right to trial by jury.  Mr. Wesley contends that he received a sentence three- to six-times longer than those co-defendants who accepted plea agreements from the government.  He further contends that the sentencing disparities cannot be explained simply by the three-level acceptance of responsibility adjustment or by criminal history differences. As will be explained, the court concludes that the disparity between Mr. Wesley's sentence and other individuals who entered guilty pleas or cooperated with the government does not constitute an extraordinary and compelling reason for a sentence reduction under § 3582(c)(1)(A).

To begin, the court notes that Mr. Wesley makes no argument that his sentence is disproportionate when compared to his co-defendants who, like Mr. Wesley, proceeded to trial.  He also does not suggest that his sentence would be lower if he were sentenced today for the same conduct.  He asserts only that he was penalized for exercising his right to a

14

jury trial as opposed to accepting a guilty plea and cooperating with the government. Without question, Mr. Wesley received a significantly lengthier sentence than those defendants who entered guilty pleas and those who cooperated with the government. Our criminal justice system rewards such conduct through specific provisions in the sentencing guidelines, *see* U.S.S.G. § 3E1.1 (adjustments for acceptance of responsibility) and the broad discretion of an individual prosecutor to confer substantial benefits through the plea negotiation process and any § 5K.1 recommendations. *See United States v. Williams*, 2022 WL 267890, at *3 (E.D. Wis. Jan. 28, 2022) ("Rather than penalizing a defendant for choosing to stand trial, the guidelines reward defendants who accept responsibility for their criminal conduct by reducing their offense level by two to three points.") (citing *United States v. Elmer*, 980 F.3d 1171, 1177 (7th Cir. 2020) (rejecting defendant's argument that district court imposed a "trial tax" in violation of the Sixth Amendment right to a speedy and public trial by denying defendant's request for acceptance of responsibility credit)). The court, then, does not accept the notion that Mr. Wesley was penalized for exercising his right to a jury trial; he elected not to accept the benefits that were available to him by resolving the case prior to trial.[4]

Of course, Mr. Wesley was well within his rights to proceed to trial and insist that a jury resolve this case. By doing so, he retained the chance that he would be found not guilty on those charges—a chance necessarily relinquished by his codefendants who pled guilty or cooperated. But his decision to exercise his right to trial also carried with it the

---

[4] Mr. Wesley has no independent evidence that the government penalized him for going to trial, such as an eleventh-hour superseding indictment containing additional counts.

risk that the jury would convict him of those charges which, of course, is what happened in this case. At that point, the sheer quantity of drugs attributable to Mr. Wesley, coupled with his decision to carry a firearm in connection with his drug trafficking activity, largely determined his lengthy sentence under the guidelines. Stripped down, then, Mr. Wesley's challenge to his lengthy sentence is one to the sentencing guidelines themselves and the prosecutor's broad discretion in the plea negotiation context. These are complaints that are likely shared by a significant number of individuals who are serving lengthy sentences after drug convictions. But, as explained by the Tenth Circuit, § 3582(c)(1)(A) is designed to remedy a defendant's "unique circumstances." *United States v. McGee*, 992 F.3d 1035, 1048 (10th Cir. 2021). Mr. Wesley has failed to identify any circumstances, unique to him, that warrant a reduction in his sentence. The motion is denied. *See United States v. Georgiou*, 2021 WL 1122630, at *10 (E.D. Pa. Mar. 23, 2021) (rejecting argument that defendant's 300-month sentence was disproportionately long or a "trial penalty;" defendant's challenge was to the guidelines themselves, a challenge that § 3582(c) was not designed to remedy) (citing *United States v. Williams*, 2020 WL 5573046, at *4 (E.D. Pa. Sept. 17, 2020) ("The remedy that [defendant] seeks is reserved for circumstances peculiar to an individual—his health, his age—and is not designed to challenge the guidelines themselves . . . [This] would undermine the very function of the federal sentencing regime: to provide certainty and consistency across sentences.").

16

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's second motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A) (doc. #1993) is **dismissed in part for lack of jurisdiction** and **denied in part**.

**IT IS FURTHER ORDERED BY THE COURT THAT** the court **declines** to issue a certificate of appealability on that portion of the court's memorandum and order dismissing defendant's § 3582(c) motion as an unauthorized successive § 2255 motion.

**IT IS SO ORDERED.**

Dated this 10th day of March, 2022, at Kansas City, Kansas.

> _s/ John W. Lungstrum_ ___
> John W. Lungstrum
> United States District Judge